UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

LESTER JONES,            )
                         )
    Plaintiff,           )
                         )
    vs.                  )        CAUSE NO. 4:06-CV-12AS
                         )
TERRY GOODMAN, et al.,   )
                         )
    Defendants.          )

OPINION AND ORDER

Lester Jones, a *pro se* prisoner, submitted a complaint under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. FED. R. CIV. PRO. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6). *Weiss v. Cooley*, 230 F.3d 1027 (7th Cir. 2000).

> A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, pro se complaints are liberally construed.
>
> In order to state a cause of action under 42 U.S.C. § 1983, the Supreme Court requires only two elements: First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in

> a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

Mr. Jones alleges that the three defendants, Parole Officer Terry Goodman, Counselor Ann Werner, and President of New Direction Judith Kuehn, violated his constitutional rights in several ways. Mr. Jones' allegations all stem from the events which occurred between the time he was released on parole on January 5, 2004, and when he was July 23, 2004 when he was transported back to prison.

Mr. Jones says that Goodman violated his rights by imposing a special stipulation upon him which lacked a rational basis, but that Goodman failed to request that same stipulation for other parolees. Goodman also wrongfully requested a warrant for Mr. Jones' arrest for missing his first scheduled session with his chemical dependancy counselor. Werner discriminated against Mr. Jones during both the assessment and his participation in the program. Kuehn denied his right to redress the main issue of his grievance against Werner and failed to respond to his grievance in a timely manner or to implement a procedure that would have provided a timely response.

I. CONDITIONS OF PAROLE

Mr. Jones alleges that Goodman imposed "selective enforcement" of the rules by requesting that the parole board impose a "special stipulation" upon him. Mr. Jones' Exhibit A is a copy of a state form entitled "Special Parole Stipulations". The form includes eight specific conditions of parole and two black stipulations. Mr. Jones' form has boxes 3, 5, and 6 marked. The 2 blank stipulations are not marked nor is anything written in them. Mr. Jones signed the form indicating he agreed to submit to a substance abuse evaluation and follow all recommendations, to not use, consume or possess illegal controlled substances, alcohol or beverages containing alcohol, and not to frequent or be present in any establishment whose main business purpose is the selling, distribution, serving, or drinking of alcohol, alcoholic beverages or illegal controlled substances.

Mr. Jones alleges that the imposition of those "special stipulations" violated his constitutional rights.

> It is useful to begin, as the Supreme Court did in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), with a review of the purpose and function of parole. "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Id.* at 477, 92 S.Ct. at 2598. Specifically, parole is an established variation on imprisonment of convicted criminals. Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed. It also serves to alleviate the costs to society of keeping an individual in prison.
> *Id.* In order to achieve these objectives, parolees are subjected to specified conditions for the duration of their parole term. These conditions often substantially restrict a parolee's activities, but are essential to the reintegration process.

> "The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules." *Id.* at 478-79, 92 S.Ct. at 2599. Parole therefore creates only a conditional liberty interest; revocation of parole deprives the parolee "only of the conditional liberty properly dependent on observance of special parole restrictions." *Id.* at 480, 92 S.Ct. at 2600. The reasoning that justifies releasing prisoners on parole also dictates that the revocation of parole need not involve "the full panoply of rights" and procedural safeguards provided to a defendant in a criminal proceeding. *Id.*
> Release of the parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts. Given the previous conviction and the proper imposition of conditions the state has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole.
> Id. at 483, 92 S.Ct. at 2601 (emphasis added).

*Faheem-El v. Klincar,* 841 F.2d 712,719-720 (7th Cir.1988)(footnote omitted).

The Supreme Court has made it clear that parolees have a more limited liberty interest than ordinary citizens. *See Morrissey v. Brewer*, 408 U.S. 471, 480(1972). However, any claim challenging the conditions of his parole must be brought as a collateral attack pursuant to 28 U.S.C. §2254.

> For parolees, the question is more metaphysical, because the "conditions" of parole are the confinement. Requirements that parolees stay in touch with their parole officer, hold down a job, steer clear of criminals, or (as in Williams's case) obtain permission for any proposed travel outside the jurisdiction, are what distinguish parole from freedom. It is because of these restrictions that parolees remain "in custody" on their unexpired sentences and thus may initiate a collateral attack while on parole.

*Williams v. Wisconsin,* 336 F.3d 576,579 (7th Cir. 2003).

To the extent that he is challenging the conditions of his parole, his claims are dismissed. Accordingly, Mr. Jones' claims that Goodman enforced special parole stipulations, that he couldn't miss a session without medical verification, that he had to pay for urinary testing, and that he had to pay a fee for group meetings are dismissed.

To the extent he is challenging the fact that Goodman requested a warrant for his arrest, his complaint fails to state a claim. "Generally, citizens enjoy the right not to be seized or arrested absent probable cause." *Knox v. Smith,* 342 F.3d 651, 657 (7th Cir.2003). Mr. Jones, however, was a parolee at the time that Goodman requested the warrant for his arrest. Again, the Supreme Court has made it clear that parolees have a more limited liberty interest than ordinary citizens. *See Morrissey v. Brewer*, 408 U.S. at 480. "Consequently, the seizure of a parolee requires something less than probable cause to be reasonable under the Fourth Amendment." *Knox v. Smith*, 342 F.3d at 657. The court in *Knox* likened the reasonable suspicion needed to justify a search of a probationer's house to that of the arrest of a parolee. *Knox v. Smith*, 342 F.3d at 657.

Mr. Jones admits he failed to attend the first session. Defendant Goodman had sufficient cause to believe that Mr. Jones had violated the terms of his parole, specifically that he was to attend a session on May 17, 2004. Because Goodman needed only reasonable suspicion to satisfy the Fourth Amendment standard,

Goodman's request for a warrant did not violate Mr. Jones' Constitutional rights. This claim will be dismissed.

## II. DISCRIMINATION

Mr. Jones alleges that the defendants discriminated against him based on his race. He says on May 13, 2004 he attended a substance abuse evaluation with Werner. During the evaluation he informed Werner that he had recently been released from the hospital due to a knee injury, and that he was given a prescription for Vicodin for the knee pain. Werner told Mr. Jones to discontinue use of the Vicodin because it is additive. Werner scheduled Mr. Jones' first session on May 17, 2004. Mr. Jones also alleges he told Goodman about the knee injury on May 13, 2004.

On May 17, 2004, Mr. Jones was unable to attend his first session with Werner because he could barely walk and was under the influence of the prescribed pain medication. On May 18, 2004, Mr. Jones rescheduled his appointment to May 21, 2004. At that session Mr. Jones was told that all participants under Parole Officer Goodman's authority would not have to pay for urinary tests if given by New Directions.

On May 27, 2004, Mr. Jones was arrested pursuant to an arrest warrant because he missed the May 17, 2004 session. Mr. Jones explained to Goodman that he missed the session because of a medical condition, and that he had attended a session on May 21, 2004. On June 10, 2004 Mr. Jones was released

and given another chance to attend sessions at New Directions. On June 10, 2004 Mr. Jones attended a session conducted by Werner consisting of approximately 7-9 white participants and himself, the only black participant. During the session Werner claimed she smelled alcohol on Jerry, one of the participants, but did nothing to reprimand him. After the session, Mr. Jones was informed that he had lost his job because he had missed work while in jail from May 27, 2004 until June 10, 2004.

On June 11, 2004 Mr. Jones attended another session with Werner. Werner presented Mr. Jones with a "Behavior Contract" (docket 2-1, pg. 14) which Mr. Jones signed so that he wouldn't again be terminated from the program. After he signed the contract Werner stated that she smelled alcohol on Mr. Jones. Mr. Jones admitted that before the session he had a non-alcoholic beer. Werner told Mr. Jones that he would have to attend sessions 3 times each week and pay additional group fees because of the alcohol. Additionally, she ordered Mr. Jones to submit and pay for a urine test. Mr. Jones refused the test because "due to the lack of funds, and what was stated to the plaintiff by the male counselor on 05-21-04, and the fact that the white participant was not ordered the same…" (Complaint, pg. 12).

Mr. Jones alleges he was treated differently than the white participants of the counseling group by defendant Werner. He alleges he was punished for smelling of alcohol when a white participant was not, and that he was required to

pay fees that white participants were not required to pay. The Fourteenth Amendment's guarantee of equal protection is a right to be free from invidious discrimination in statutory classifications or other governmental activity, *Harris v. McRae*, 448 U.S. 297, 322 (1980); *Shango v. Jurich*, 681 F.2d 1091, 1103 (7th Cir. 1982), but does not extend to erroneous, or even arbitrary, administration of state powers. Equal protection "does not require absolute equality or precisely equal advantages." *French v. Heyne*, 547 F.2d 994, 997 (7th Cir. 1976). The constitution is not violated where a person simply is treated unfairly as an individual. *Travtvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990) (citing *Huebschen v. Dep't of Health and Social Servs.*, 716 F.2d 1167, 1171 (7th Cir. 1983)). Giving Mr. Jones the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, it is possible that Ms. Werner was acting in a discriminatory way. Therefore Mr. Jones will be permitted to proceed on this claim against Ms. Werner.

### III. Grievance Procedure

Mr. Jones alleges defendant Kuehn denied his right to redress the main issue of his grievance against defendant Werner and failed to respond to his grievance in a timely manner in violation of his First and Fourteenth Amendment rights. The First Amendment's right to redress of grievances is satisfied by the availability of a judicial remedy, *Azeez v. DeRobertis*, 568 F.Supp. 8, 10 (N.D. Ill. 1982), and the Constitution does not require a grievance system. *Spencer v. Moore*,

638 F.Supp. 315, 316 (E.D. Mo. 1986). Moreover, the Fourteenth Amendment does not protect State-created inmate grievance procedures, and alleged violations of these grievance procedures do not state a claim under § 1983. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.), cert. denied, 488 U.S. 898 (1988); *Azeez v. DeRobertis*, 568 F.Supp. at 8. The First Amendment right to petition the government for a redress of grievances protects a person's right to complain to the government that the government has wronged him. Mr. Jones' right to petition for a redress of grievances wasn't infringed; he says he filed a grievance. He complains he did not receive an answer, but failure to receive an answer isn't actionable. In this case, Mr. Jones has no constitutional right to a grievance system, nor to an answer if he does file a grievance, only to petition for redress. This part of his claim fails to state a claim.

To the extend that he complains his due process rights were violated, he fails to state a claim. There are Constitutional due process requirements for a parole revocation.

> [T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. Parole arises after the end of the criminal prosecution, including imposition of sentence.

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (citations omitted). Mr. Jones does not allege that any of his due process requirements during the parole revocation proceeding were violated, only that his grievance regarding defendant Werner was not answered to his liking. Due process does not require the right to be placed

back into a counseling program, nor to request a different counselor. Therefore Mr. Jones does not state a claim for which relief can be granted and this claim must be dismissed.

For the foregoing reasons, the court:

(1) **GRANTS** Mr. Jones leave to proceed against Ann Werner in her individual capacity for monetary damages for discrimination;

(2) **DISMISSES** all other claims and defendants;

(3) **DIRECTS** the clerk to transmit the summons and USM-285 for Ann Werner to the United States Marshals Service along with a copy of this order and a copy of the complaint;

(4) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Ann Werner;

(5) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Ann Werner respond, as provided for in the Federal Rules of Civil Procedure and N.D. IND. L.R. 10.1, only to the one claim for which Mr. Jones has been granted leave to proceed in this screening order.

SO ORDERED on June 20, 2006

                                                    S/ ALLEN SHARP
                                      ALLEN SHARP, JUDGE
                                      UNITED STATES DISTRICT COURT